FILED
February 26, 2018
TN COURT OF
WORKERS' COMPENSATION
CLAIMS
Time 2:02 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| ROBERT WATSON, | ) | Docket No. 2017-05-0515 |
| Employee, | ) | |
| v. | ) | |
| CATLETT CONSTRUCTION, | ) | State File No. 36534-2017 |
| Employer, | ) | |
| and | ) | |
| AUTO OWNERS INS. CO., | ) | Judge Dale Tipps |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

This matter came before the Court on February 8, 2018, for an Expedited Hearing. The present focus of this case is whether Mr. Watson is entitled to medical treatment and temporary disability benefits for his alleged back and left shoulder injuries. The central legal issues are whether the statute of limitations or failure to give adequate notice bar Mr. Watson's claim and, if not, whether he is likely to establish at a hearing on the merits that his injuries arose primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court holds Mr. Watson failed to meet this burden and is not entitled to benefits at this time.

### History of Claim

Mr. Watson had a history of back and shoulder problems when he began working as a window installer for Catlett Construction in 2012. Within a few months after starting the job, he developed pain in his low back and left shoulder. Mr. Watson testified he reported this pain to his supervisor, Joel Catlett, who said Mr. Watson was an independent contractor not covered under workers' compensation. Mr. Catlett also told Mr. Watson that his problems were "normal wear and tear." Mr. Watson continued working for Catlett and treating with his primary care providers.

On June 23, 2016, Mr. Watson said he felt a sharp pain in his left shoulder and low back while lifting and securing a window. He reported this to Mr. Catlett, who again

1

responded that Mr. Watson was not covered and that it was just wear and tear. Again, Mr. Watson continued working and treating on his own. He acknowledged that Mr. Catlett tried to provide him with lighter duty because of his continuing problems.

Tommy Catlett, the owner of Catlett Construction, and Joel Catlett, his son, both denied that Mr. Watson ever notified them of any specific injury occurring on June 23, 2016. Joel said Mr. Watson didn't report any injury until 2017 and, even then, did not mention a particular date. Joel also testified that Mr. Watson often wore a back brace and an ice pack on his left shoulder before Catlett hired him. Because of these problems, Joel usually did the lifting when working with Mr. Watson.

The parties agreed that Catlett terminated Mr. Watson on May 8, 2017, but they disputed the reason for that termination. Mr. Watson contended Catlett fired him because he spoke to a Department of Labor employee who was investigating whether Catlett provided workers' compensation coverage for its employees. Tommy Catlett testified that he did not find out about the investigation until after firing Mr. Watson for a number of reasons, including absenteeism.

Mr. Watson submitted several medical records from a number of providers.[1] The first of these came from Family Health Group, where Mr. Watson saw his primary care provider, PA Teresa Pisani, in November 2013 complaining of left shoulder pain present for a week. He reported doing physical therapy in the past. The next record is from February 2016 and shows that Mr. Watson reported worsening low back pain that began three years earlier. PA Pisani noted that Mr. Watson had a chiropractor, and she assessed degenerative disc disease. The next few records show Mr. Watson sought treatment for his right shoulder, but on June 28, 2016, he reported severe low back pain with an onset "2 days ago." Under "History of Present Illness," PA Pisani noted, "Patient installs windows all day and is literally wearing out his back, he [overdid] at home on Sunday . . . ."

In a June 8, 2017 letter, PA Pisani and Danielle Henson, DO, noted that Mr. Watson began working for Catlett in September 2012. They concluded, "Since he did not have shoulder and back problems prior, it is likely that they incurred secondary to the repetitive lifting and twisting motion required to install windows and doors."

Records from Mr. Watson's chiropractor, Mark Hawkins, begin with a visit in February 2016. Among a number of other complaints, Mr. Watson reported left shoulder and lumbar pain that have "stayed the same since the last visit." This notation is essentially unchanged through several visits until the last record in March 2017.

---

[1] Mr. Watson also submitted a number of C-32 Standard Form Medical Reports, but the Court did not admit these into evidence because they failed to comply with the provisions of Tennessee Code Annotated section 50-6-235.

2

Dr. Hawkins wrote in a letter that Mr. Watson was his patient since 2010. He stated that Mr. Watson treated for "various back and shoulder complaints, some of which he has indicated were either due to or worsened by his current employment. In my professional opinion, his current complaints/injuries are consistent with the type of lifting and bending that his job requires him to do."

Mr. Watson saw Dr. Christopher Stark on August 5, 2016. Dr. Stark noted a "long history of left shoulder problem[s] going on about a year. He installs windows or doors." He also noted a "1-year history of back problems." After examining Mr. Watson and reviewing his MRI, Dr. Stark diagnosed AC arthritis, a labral tear, and rotator cuff tendinitis, as well as lumbar degenerative disc disease.

Dr. John Klekamp saw Mr. Watson in October 2016 for chronic low back pain. He noted, "Over a year ago, he was installing some windows and was pulling back on a window and had a sharp onset of back pain. Over the last 12 to 16 months, he has had ongoing back discomfort." Dr. Klekamp diagnosed mild lumbar disc degeneration and referred Mr. Watson to pain management. Mr. Watson began receiving treatment from Comprehensive Pain Specialists for neck and back pain, as well as left shoulder pain. Records from those providers include a notation that the pain began approximately January 2015.

Mr. Watson then saw Dr. Jeffrey Adams in February 2017. He reported injuring his left shoulder seven months earlier when he was carrying a window and felt a sharp pain. Dr. Adams diagnosed transient synovitis and suggested subacromial decompression with AC resection.

Mr. Watson returned to Dr. Stark, who performed arthroscopic labral repair, biceps tenodesis, subacromial decompression, and rotator cuff debridement on August 3, 2017.[2] In a later record, Dr. Stark stated, "There is a question of causation. Mr. Robert Watson hurt his shoulder on 06/23/2016 installing a window. It has been sore since that time that is his cause of the injury and he correlates with the findings at the time of surgery on 08/03/2017." Dr. Stark also wrote a letter on November 12, 2017, stating in part,

> He is a very active 40-year-old gentleman who injured his shoulder in the summer of 2016 while installing windows and doors. He sustained a labral tear and also injured his AC joint. . . . The injury he had at the time of surgery in August 2017 does correlate and is related to the work he was performing in 2016.

---

[2] The parties submitted no medical records indicating whether Dr. Stark provided other treatment in the year between Mr. Watson's first visit and the surgery.

Mr. Watson requested that the Court order Catlett to provide additional medical treatment, payment of his past medical bills, and payment of temporary disability benefits.

Catlett countered that Mr. Watson is not entitled to workers' compensation benefits. It contended that his claim is barred by the statute of limitations and his failure to provide timely notice. Further, Catlett argued that Mr. Watson failed to establish that his work was the primary cause of his condition.

## Findings of Fact and Conclusions of Law

Mr. Watson need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Applying these principles to the facts of this case, the Court cannot find that Mr. Watson appears likely to prevail at a hearing on the merits of his claim.

### *Statute of Limitations*

Tennessee's workers' compensation law provides that when an employer has not paid workers' compensation benefits to an employee, that employee's claim is barred unless he files a petition for benefit determination (PBD) within one year after the accident resulting in injury. *See* Tenn. Code Ann. § 50-6-203(b)(1). Mr. Watson alleged a June 23, 2016 injury. He filed a PBD on May 22, 2017, which is less than a year after the alleged injury date. The Court, therefore, finds that the statute of limitations does not bar his claim.

### *Notice*

Tennessee Code Annotated section 50-6-201(a)[3] provides that an injured employee must give written notice of an injury within thirty days unless it can be shown that the employer had actual knowledge of the accident. The parties dispute whether Mr. Watson actually gave Catlett notice of his June 23, 2016 shoulder and back injury. The Court finds it unnecessary to resolve this factual dispute because Tennessee Code Annotated section 50-6-201(a)(3) provides that failure to give notice will not bar compensation "unless the employer can show, to the satisfaction of the workers' compensation judge before which the matter is pending, that the employer was prejudiced

---

[3] Section 201 currently requires notice within fifteen days. However, the amendment establishing the fifteen-day deadline did not take effect until July 1, 2016.

4

by the failure to give the proper notice, and then only to the extent of the prejudice." Catlett presented no evidence of any prejudice nor suggested it in any arguments. In the absence of this information, the Court cannot find Mr. Watson's alleged failure to report the injury resulted in any prejudice to Catlett, such as additional physical damage or an impediment to investigating the claim. The Court, therefore, finds that Mr. Watson appears likely to prevail at a hearing on the merits on the issue of notice.

*Compensability*

To prove a compensable injury, Mr. Watson must show that his alleged injuries arose primarily out of and in the course and scope of his employment. To do so, he must show his injury arose primarily out of a work-related incident, or specific set of incidents, identifiable by time and place of occurrence. Applying these principles, the Court cannot find at this time that Mr. Watson is likely to meet his burden of proof.

Regarding the requirement of a work-related incident "identifiable by time and place of occurrence," Mr. Watson's medical records do not support his contention that he suffered a discrete, identifiable injury on June 23, 2016.[4] Family Health Group records show the onset of shoulder pain in November 2013 and a worsening low back pain that began in approximately 2013. The records state that Mr. Watson reported severe, low back pain on June 28, 2016, but said it began "2 days ago" and that "he overdid" at home on Sunday. The Court notes that two days before the June 28 visit was, in fact, a Sunday. In August 2016, Dr. Stark noted a "long history of left shoulder problem[s] going on about a year" and a "1-year history of back problems." Dr. Klekamp's October 2016 record reflected an onset of back pain "over a year ago." Comprehensive Pain Specialists records include a notation that the pain began approximately January 2015.

Not only are the dates of injury or onset of symptoms in the medical records inconsistent with each other, but also they are at odds with Mr. Watson's claim of a June 23, 2016 injury date. The first mention of any incident resembling the one Mr. Watson described appears over half a year after the alleged date. Dr. Adams' February 2017 note reflects that Mr. Watson was carrying a window at work and felt a sharp pain seven months earlier. This single notation, weighed against the conflicting information in the other records, is insufficient for the Court to conclude that Mr. Watson is likely to identify a specific incident by time and place of occurrence.

Even if Mr. Watson were to establish an identifiable injury, he would have to show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering

---

[4] Mr. Watson clearly had prior problems with his shoulder and back, and some of his providers suggested his work might have increased his symptoms. However, because Mr. Watson claimed in his PBD and his testimony that he was seeking benefits for a June 23, 2016 injury, the Court makes no findings on whether he would likely prevail on a claim for aggravation of a preexisting condition.

5

all causes." "Shown to a reasonable degree of medical certainty" means that, "in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility." *See* Tenn. Code Ann. § 50-6-102(14). The medical opinions regarding causation in this case come from Dr. Henson, Dr. Hawkins, and Dr. Stark.

Dr. Henson stated, "Since he did not have shoulder and back problems prior, it is likely that they incurred secondary to the repetitive lifting and twisting motion required to install windows and doors." Mr. Watson's preexisting shoulder and back conditions, including several years of treatment, are undisputed. Insofar as Dr. Henson based her opinion on the lack of any prior problems, her causation conclusions are unreliable and do not meet the statutory requirement of "considering all causes."

Dr. Hawkins indicated that Mr. Watson's "current complaints/injuries are consistent with the type of lifting and bending that his job requires him to do." While there is no reason to doubt Dr. Hawkins' conclusion, mere consistency between Mr. Watson's job duties and his current complaints is insufficient to establish that the job was the *primary* cause of his condition.

Dr. Stark's opinion suffers from a similar deficiency. He simply said the injury described by Mr. Watson "correlate[s] and is related to the work he was performing in 2016." Again, a correlation or relatedness does not establish a primary cause, especially in light of Mr. Watson's complicated medical history.

The Court notes that Mr. Watson appeared sincere in his belief that his work activities caused his conditions. However, the Court must abide by the causation requirements of the Workers' Compensation Law and cannot infer from the mere existence of those conditions that they arose primarily out of Mr. Watson's employment. Thus, the Court finds Mr. Watson is unlikely to prove at this time that his condition arose primarily out of and in the course and scope of his employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Watson's claim against Catlett Construction and its workers' compensation carrier for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on April 5, 2018, at 9:00 a.m. You must call 615-741-2112 or toll-free at 855-874-0473 to participate. Failure to call may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

**ENTERED this the 26th day of February, 2018.**

6

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**


## APPENDIX

Exhibits:
1. Affidavit of Robert Watson
2. Affidavit of Amber Watson
3. Records from Vanderbilt Bone and Joint Clinic
4. Dr. Stark's C-32 Form (identification only)
5. Records from Maury Regional (Family Health Group)
6. PA Pisani's C-32 Form
7. Records from In Motion Spine & Joint Center
8. Dr. Hawkins' C-32 Form
9. Records from Comprehensive Pain Specialists
10. Records from Vanderbilt Bone and Joint Clinic
11. Records from Middle Tennessee Bone & Joint Clinic
12. Records from Results Physiotherapy
13. Records from Cool Springs Interventional
14. Sprint telephone records
15. Sprint telephone records
16. Copies of text messages

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Parties' Pre-Hearing Statements
5. Catlett's Exhibit and Witness Lists
6. Catlett's Objections to C-32 Forms

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of February, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Robert Watson | X | | X | 405 Hump Circle<br>Spring Hill, TN 37174<br>robertthumperwatson@gmail.com |
| Michael Haynie, Employer's Attorney | | | X | mhaynie@manierherod.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8